UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                            )
                                            )
**DAVID MARKHAM et al.,**                   )
                                            )
       **Plaintiffs,**           )
                                            )
   **v.**                                )
                                            )   Civil Action No. 19-10018-DJC
                                            )
**TOWN OF CHELMSFORD et al.,**              )
                                            )
       **Defendants.**           )
                                            )
                                            )
_____)

## MEMORANDUM AND ORDER

**CASPER, J.**                                                          **August 26, 2019**

### I.   Introduction

Defendants Town of Chelmsford ("Chelmsford"), the Town of Chelmsford Board of Selectmen, Emily Antul, Paul Cohen, Glenn Diggs, George Dixon, Jr., Kenneth Lefebvre and Patricia Wojitas ("Defendants") seek dismissal of Plaintiffs David Markham, the Sewer Fairness Alliance of Chelmsford and the Sewer Fairness Alliance of Chelmsford, Inc.'s ("Plaintiffs") complaint, D. 1-2, which alleges that Defendants violated Plaintiffs' due process rights under both the Massachusetts Declaration of Rights and the United States Constitution.  D. 5.  Defendants have also moved to strike the affidavit of David Foley (the "Foley Affidavit"), D. 10, which Plaintiffs included as an exhibit to their opposition, D. 10.  For the reasons set forth below, the Court ALLOWS the motion to strike, D. 10, but DENIES the motion to dismiss, D. 5.

**II.     Standard of Review**

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), the Court must determine if the facts alleged "plausibly narrate a claim for relief." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (internal citation omitted). Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry. García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013). First, the Court must perform a close reading of the claim to distinguish the factual allegations from the conclusory legal allegations contained therein. Id. Factual allegations must be accepted as true, while conclusory legal conclusions are not entitled credit. Id. Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the conduct alleged." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011). In sum, the complaint must provide sufficient factual allegations for the Court to find the claim "plausible on its face." García-Catalán, 734 F.3d at 103. "In determining whether a [pleading] crosses the plausibility threshold, the reviewing court [must] draw on its judicial experience and common sense." García-Catalán, 734 F.3d at 103 (internal quotation marks and citations omitted). "This context-specific inquiry does not demand a high degree of factual specificity." Id. (internal quotation marks and citations omitted).

When reviewing a motion pursuant to Fed. R. Civ. P. 12(b)(6), the Court "may properly consider only facts and documents that are part of or incorporated into the complaint; if matters outside the pleadings are considered, the motion must be decided under the more stringent standards applicable to a Rule 56 motion for summary judgment." Trans-Spec Truck Serv. Inc. v. Caterpillar, Inc., 524 F.3d 315, 321 (1st Cir. 2008); see also Fed. R. Civ. P. 12(d). The Court may make exceptions for "documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently

referred to in the complaint." Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001) (quoting Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)). If the documents do not fall within this narrow class of exceptions, and the Court nevertheless considers them in deciding the motion, the parties "must be given a reasonable opportunity to present all the material that is pertinent to the motion," and the motion "must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). If the Court declines to convert the motion, the Court may strike the additional documents. See, e.g., Penney v. Deutsche Bank Nat'l Tr. Co., No. 16-CV-10482-ADB, 2017 WL 1015002, at *3 (D. Mass. Mar. 15, 2017).

**III.    Factual Allegations**

This summary is based upon the allegations in the complaint, D. 1-2, which the Court must accept as true for the purposes of resolving this motion to dismiss.

Plaintiffs David and Jill Markham are residents of Chelmsford and members of Plaintiff Sewer Fairness Alliance of Chelmsford. D. 1-2 at ¶ 3. The Sewer Fairness Alliance of Chelmsford is an unincorporated organization of over three hundred households in Chelmsford, most of which use grinder pumps provided by the Town of Chelmsford. Id. at ¶ 4. Plaintiff Sewer Fairness Alliance of Chelmsford, Inc. is a 501(c)(3) organization with a mission to advocate on behalf of homeowners with grinder pumps. Id. at ¶ 5. Defendants are Chelmsford, the Town of Chelmsford Board of Selectmen, and all of the current Selectmen, in their official capacities. Id. at ¶¶ 12-13.

The instant dispute arises out of Chelmsford's provision of a sewage grinder pump to the Markhams and subsequent repair costs for the pump. See id. at ¶ 6. The Markhams' pump experienced a failure on September 11, 2016 during a power outage. Id. at ¶¶ 28-38. In July 2017, the Markhams received a bill for repair of the grinder pump resulting from that power failure from the Town along with notification that the Chelmsford would not cover the costs of the repair. Id.

at ¶¶ 47-48.  The Markhams then sought review of the repair charges by reaching out to town administrators for a meeting.  Id. at ¶¶ 53-54.  In December 2017 and January 2018, Sewer Fairness Alliance of the Town of Chelmsford, Inc., through its president, David Foley, investigated the September 11, 2016 grinder pump failure and prepared a report stating that the failure could have been due to the power outage  and there was no negligence by the Markhams in their operation of same.  Id. at ¶ 56.  Following further outreach by Foley, town officials held a hearing to discuss the repair charge for the Markhams' grinder pump.  Id. at ¶ 57.  Foley presented the results of his investigation at the hearing.  Id.  On February 28, 2018, the Department of Public Works notified the Markhams that they continued to find them responsible for the grinder pump failure, but were willing to reduce the amount of the repair charge from $1065 to $640.  Id. at ¶ 58.  Following the hearing results, Foley spoke on behalf of the Markhams at a March 12, 2018 Selectmen meeting and sent his remarks to one Selectman who was not present for the meeting.  Id. at ¶¶ 60-61.  Foley continued to advocate on behalf of the Markhams through outreach to the community via letter in the Lowell Sun, emails to the Board of Selectmen, the Town Manager and the Director of Public Works.  Id. at ¶¶ 62-70.  When Foley received responses, town officials informed him that the Markhams had either received an appropriate hearing or had failed to pursue additional options to be heard.  Id.

**IV.      Procedural History**

Plaintiffs brought this action in Middlesex Superior Court on December 4, 2018.  D. 1-2.  Defendants removed the action to this Court on January 3, 2019.  D. 1.  Defendants have now moved to dismiss both claims, for violation of procedure due process under the Massachusetts Declaration of Rights and under the U.S. Constitution, under Fed. R. Civ. P. 12(b)(6).  D. 5.  Defendants also have moved to strike an affidavit by Foley attached to Plaintiffs' opposition to the

motion to dismiss.  D. 11.  The Court heard oral argument on the motions and took the matters under advisement.  D. 17.

**V.     Discussion**

   **A.     <u>Standing of the Sewer Fairness Alliance Plaintiffs</u>**

As an initial matter, the Court addresses the Defendants' standing argument as to the Sewer Fairness Alliance of Chelmsford and the Sewer Fairness Alliance of Chelmsford, Inc.  D. 6 at 10-11.  As alleged, the two entities are distinct where the Sewer Fairness Alliance is an "unincorporated organization of over three hundred households in Chelmsford, most of which have been forced to have grinder pumps by the Town of Chelmsford" and Sewer Fairness Alliance of Chelmsford, Inc. is an "an incorporated organization."  D. 1-2 at 3.  Both entities share similar missions of education and advocacy concerning grinder pumps and homeowners who have grinder pumps.  Id.  Plaintiffs point to <u>Hunt v. Washington State Apple Advert. Comm'n</u>, 432 U.S. 333 (1977), for the principle of "associational standing" whereby "an association may have standing solely as the representative of its members."  Id.  (citing <u>Warth v. Seldin</u>, 422 U.S. 490, 511 (1975)).  To establish associational standing:

> [t]he association must allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit. . . . So long as this can be established, and so long as the nature of the claim and of the relief sought does not make the individual participation of each injured party indispensable to proper resolution of the cause, the association may be an appropriate representative of its members, entitled to invoke the court's jurisdiction.

<u>Warth</u>, 422 U.S. at 511.  The <u>Hunt</u> Court extended the associational standing doctrine to an organization that "for all practical purposes, performs the functions of a traditional trade association."  <u>Hunt</u>, 432 U.S. at 344.  Here, the Sewer Fairness Alliance of Chelmsford is alleging injury both real and threatened on behalf of its members which include the Markhams.  D. 1-2 ¶¶

3-4. Sewer Fairness Alliance of Chelmsford, Inc., while not alleged to have traditional "members," see id. ¶ 5, still seems to "perform[] the functions of a traditional trade association" by advocating for homeowners with grinder pumps and developing plans to improve their lives. Id. Given these allegations and the nature of the claims asserted by Plaintiffs the Markhams, the Court concludes that both entities have standing here at least as to the claims asserted by the Markhams and will proceed to address the Defendants' other grounds for dismissal.

### B.    Motion to Strike

Before turning to the other grounds for dismissal, the Court ALLOWS Defendants' motion to strike the Foley Affidavit, D. 11, given the nature of the Defendants' motion. Plaintiffs urge the Court to view the Foley Affidavit as falling within one of the narrow exceptions to the rule limiting review to the 'four corners' of the complaint for a challenge under Fed. R. Civ. P. 12(b)(6), but their arguments are unavailing. Unlike the circumstances in the cases upon which Plaintiffs rely, D. 12 at 1-2, the Foley Affidavit is neither referenced in the complaint nor is a document the authenticity of which the parties do not dispute, an official public records or document central to Plaintiffs' claims. See Alt. Energy, Inc., 267 F.3d at 33. Instead, the Foley Affidavit, as Plaintiffs appear to acknowledge, is not such a document, but attestations contested by Defendants, that instead "explains the contents of the [c]omplaint and the exhibits attached to the [c]omplaint." D. 12 at 2. Since the Foley Affidavit "touches on many of the allegations from the Complaint and effectively functions as an amendment to the Complaint," see Penney, 2017 WL 1015002, at *3, it is not appropriate to consider in resolution of the Defendant's motion to dismiss under Rule 12(b)(6). Moreover, given Defendants' objection to consideration of this contested affidavit and the current posture of this case, the Court declines to convert Defendants' pending motion to a motion for summary judgment pursuant to Fed. R. Civ. P. 12(d); see Gulf Coast Bank & Tr. Co.

v. Reder, 355 F.3d 35, 38 (1st Cir. 2004).  Accordingly, the Court ALLOWS the motion to strike the Foley Affidavit, and the Court has not considered it in deciding the pending motion to dismiss.

    **C.**    **Motion to Dismiss**

        *1.*    *Procedural Due Process Claims*

            a)    Direct Claim Under the Massachusetts Declaration of Rights

Plaintiffs' first cause of action is for a violation of their procedural due process rights under the Massachusetts Declaration of Rights.  D. 1-2 at 5.  As an initial matter, Defendants contend that there is no private right of action exists under the state constitution and so the claim must be converted to one under the Massachusetts Civil Rights Act, Mass. Gen. Laws ch. 12, §§ 11H & 11I ("MCRA"), which, according to Defendants, must also fail.  D. 6 at 3-6.  Plaintiffs counter that a private cause of action, at least for injunctive or declaratory relief, does exist under the Massachusetts Declaration of Rights.  D. 10 at 3-6.

Defendants' position has some recent support where at least one court in this district has concluded that it would not recognize a direct state constitutional claim because "[n]o Massachusetts appellate court . . . has ever held that such a right exists" and "[i]t is up to the courts of Massachusetts, not this Court, to make that choice."  See Pimentel v. City of Methuen, 323 F. Supp. 3d 255, 274 (D. Mass. 2018) (reciting history of decisions addressing direct claims under the Declaration of Rights); but see Podgurski v. Dep't of Correction, No. CIV.A. 13-11751-DJC, 2014 WL 4772218, at *7 (D. Mass. Sept. 23, 2014) (noting "as a general proposition, a cause of action can, in certain circumstances, be brought directly under the Massachusetts Declaration of Rights in the absence of a statutory vehicle for obtaining relief") (citing Parsons ex rel. Parsons v. Town of Tewksbury, No. 091595, 2010 WL 1544470, at *4 (Mass. Super. Jan. 19, 2010)).  Even more recently, however, a Massachusetts appellate court has recognized a direct claim for

declaratory or injunctive relief under the Declaration of Rights. Doe v. Sex Offender Registry Bd., 94 Mass. App. Ct. 52, 64 (2018) (citing Lane v. Commonwealth, 401 Mass. 549, 552 (1988) and distinguishing direct constitutional claim for declaratory or injunctive relief from a claim for damages that would have to be made under the MCRA). Accordingly, to the extent that Plaintiffs seek declaratory or injunctive relief for their state constitutional claim,[1] the Court shall not dismiss it on the grounds that they have failed to make a showing for a MCRA claim.

b)   Addressing the Federal and State Procedural Due Process Claim

Other than that a federal due process claim must be asserted under 42 U.S.C. § 1983, Doe, 94 Mass. App. Ct at 64, the standard for asserting a procedural due process claim under state or federal law is the same: Plaintiffs must allege that they were deprived of a constitutional property or liberty interest without due process of law. Coyne v. City of Somerville, 972 F.2d 440, 443 (1st Cir. 1992); Leger v. Comm'r of Revenue, 421 Mass. 168, 172 (1995) (noting that procedural due process requirements are "substantially the same" under Massachusetts and federal law). "'The fundamental requisite of due process is an opportunity to be heard at a meaningful time and in a meaningful manner.'" Christensen v. Kingston Sch. Comm., 360 F. Supp. 2d 212, 222 (D. Mass. 2005) (quoting Matter of Kenney, 399 Mass. 431, 435 (1987)). "It is well established that in every case where a protected property interest is at stake, the Constitution requires, at a minimum, some kind of notice and some kind of opportunity to be heard." Clukey v. Town of Camden, 717 F.3d 52, 59 (1st Cir. 2013) (and cases cited).

Although it may well be that the Plaintiffs have received all of the process that was due them, the Court cannot resolve that issue at this juncture since "[e]xactly what sort of notice and

---

[1] Plaintiffs' complaint, D. 1-2, requests compensation for grinder pump charges levied against Plaintiffs and other homeowners, but in subsequent filings, Plaintiffs have clarified that they are only seeking declaratory and injunctive relief. D. 10 at 5.

what sort of hearing the Constitution requires . . . vary with the particulars of the case," Clukey, 717 F.3d at 59. The Markhams, along with Sewer Fairness Alliance, Inc. President David Foley, appealed the repair charge for the grinder pump and received a hearing in front of the town Sewer Superintendent, the Assistant Director of the Department of Public Works and the Sewer Division Departmental Assistant. D. 1-2 at 16. Following the results of that hearing, the Markhams and Foley contacted and were heard by the town Board of Selectmen, the Town Manager, the Assistant Town Manager and the Director of Public Works. Id. at 17-20. Even as alleged, it appears that the Markhams were given notice of such hearing, but the contours of same in terms of witnesses and evidence proffered and/or rejected are not clear. Plaintiffs also point out that the decisionmaker in the hearing was the same entity levying the repair charge, which alone does not support their claims, but, if accompanied by bias that served to undermine the integrity of the proceeding, may lend credence to their claims. See Duhani v. Town of Grafton, 52 F. Supp. 3d 176, 182 (D. Mass. 2014) (applying summary judgment standard in finding that "[i]n order to establish that he was deprived of his procedural due process right to a pre-termination hearing, a plaintiff must show more than bias, he must show that the pre-termination hearing was meaningless because, for instance, the outcome was pre-ordained, or the bias was so severe as to undermine the concerns and goals of the hearing"). A determination of the adequacy of such process may be determined best on a fuller record. Miley v. Hous. Auth. of City of, Bridgeport, 926 F. Supp. 2d 420, 431 (D. Conn. 2013) (noting that "the question of whether [plaintiff] was afforded procedural due process is a fact intensive inquiry best reserved for summary judgment or trial").

Defendants also claim that Plaintiffs have failed to state a plausible procedural due process claim since, whatever process was due was satisfied by a post-deprivation procedure available under state law for abatement of the charges. That is, while exhaustion of state remedies is not

required for asserting a federal constitutional claim, Exeter-West Greenwich Regional School Dist. V. Pontarelli, 788 F.2d 47, 52 (1st Cir. 1986) (citing Patsy v. Board of Regents of the State of Florida, 457 U.S. 496, 501 (1982)), "the existence of state remedies *is* relevant" for determining whether any pre-deprivation (or post-deprivation for those deprivations "occasioned by random and unauthorized conduct by state officials") process was sufficient. Zinermon v. Burch, 494 U.S. 113, 125-26 (1990) (emphasis in original); see Leger v. Commissioner of Revenue, 421 Mass. 168, 174 (1995) (concluding under state law that plaintiff's due process rights regarding assessed taxes "can be satisfied by post-deprivation proceedings"). Here, Defendants cite to Plaintiffs' failure to pursue abatement of the repair charges under Mass. Gen. L. c. 59 § 59 for general tax abatement or Mass. Gen. L. c. 83 § 16E through appeal to the appellate tax board as the statute permits. Id.; see Tomaselli v. Beaulieu, 967 F. Supp. 2d 423, 435–36 (D. Mass. 2013) (noting that "[s]ewer usage fees that remain unpaid become a lien on the property, and the refusal of a board of assessors to issue an abatement is appealable to the Appellate Tax Board"). Although Plaintiffs may have effectively sought an abatement from Chelmsford (and the town reduced the charge from $1065 to $640), D. 1-2 ¶ 58, it is not clear from the allegations that they sought (or could seek) such abatement under Mass. Gen. L. c. 59 § 59 or c. 83 § 16E or, having not having received full relief, appealed to the appellate tax board. Although it is correct, as Defendants point out, that "so long as the government provides an adequate post-deprivation remedy, an individual claiming to have been deprived of a constitutionally protected property interest cannot claim a violation of procedural due process," Slavas v. Town of Monroe, No. 16-CV-30034-KAR, 2017 WL 959575, at *8 (D. Mass. Mar. 10, 2017), the Court cannot conclude at this juncture that even if such post-

deprivation process would be sufficient here, whether such remedy was available to the Markhams for the grinder repair cost (which Plaintiffs contend it does not, D. 10 at 10).[2]

## VI. Conclusion

For the reasons stated above, the Court ALLOWS Defendants' motion to strike, D. 11, but DENIES Defendant's motion to dismiss, D. 5.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge

---

[2] Although the Court is aware of the Certificate of Vote attached as Exhibit A to Defendants' memorandum, D. 6-1, adopting Mass. Gen. L. c. 83, §§ 16A-16F, and even as the Court can take judicial notice of this public record for the purposes of this motion, it is not clear on the present record whether the nature of the repair charge falls under § 16A-16F and gives rise to the availability of relief under § 16E.